230 S.W.2d 160 (1950)
CITY OF CARUTHERSVILLE
v.
CANTRELL et al.
No. 27741.
St. Louis Court of Appeals. Missouri.
May 16, 1950.
Rehearing Denied June 13, 1950.
*161 Von Mayes, Caruthersville, Fred L. Henley, Caruthersville, Jack O. Knehans, Cape Girardeau, and Rush H. Limbaugh, Cape Girardeau, for appellants.
Ward & Reeves, Caruthersville, for respondent.
BENNICK, Commissioner.
This is an action in ejectment which was brought by plaintiff, City of Caruthersville, to recover the possession of a certain strip of land alleged to be a part of a public alley in said city, and further alleged to be unlawfully withheld by defendants, W. L. Cantrell and Samuel Castleberry, who own and operate a hardware store in said city known as Traders Mercantile Company.
The strip of land in question is 8 feet in width and 48 feet in length, and lies immediately to the rear of the store building in which defendants conduct their hardware business.
The petition was in the conventional form for an action of this character.
The answer set up that title was in defendants by reason of adverse possession for more than 10 years; that defendants were the owners of the fee simple title to the land; that the land was private property, was no part of a public alley, and had never been dedicated to public use; that defendants and those under whom they claimed had at all times paid city, county, and state taxes on the land; that plaintiff city had theretofore granted defendants a permit to construct improvements on the land; that a part of the land described in the petition had been occupied by a building and used for private purposes for more than 20 years; and that plaintiff city had never expended any public money or any labor upon such strip of land, and had no right, title, or interest entitling it to possession of the same.
Defendants sought no affirmative relief, but merely asked that plaintiff's petition be dismissed.
Originating in the Circuit Court of Pemiscot County, the case, on defendants' application, was transferred to the Cape Girardeau Court of Common Pleas on change of venue.
A jury being waived, the case was tried to the court alone, and at the conclusion of the evidence the court rendered judgment in favor of plaintiff and against defendants.
Specifically the court found that the strip of land in question was a part of a public alley in which plaintiff and the public had an easement, and to the possession of which plaintiff was entitled for public use as an alley; that the land had been acquired as an alley by common-law dedication and prescription, and had been adversely used by the public for more than 10 years prior to the time when defendants took possession of the same; and that an easement and right of possession had vested in plaintiff for use of the land as a public alley, which *162 easement had been accepted by plaintiff and the public.
Disallowing each and every one of the pleaded defenses, the court adjudged that plaintiff recover possession of the strip of land from defendants for use as a public alley, and further ordered that execution issue to restore to plaintiff the possession of the land.
Unavailingly moving for a new trial, defendants gave notice of appeal, and by subsequent steps have caused the case to be transferred to this court for our review.
The present action in ejectment was instituted on October 27, 1947, and the change of venue was granted on April 14, 1948. Seven months after the institution of this action, or, to be exact, on May 24, 1948, Cantrell and Castleberry, the defendants herein, instituted a suit to quiet title in the Circuit Court of Pemiscot County, naming as defendants the City of Caruthersville and the members of the city council. The quiet title suit involved the same property as is involved in this ejectment suit, and the prayer was that the court try and determine the estate, title, and interest of the parties respectively in and to the land in question, and adjudge that title was vested in Cantrell and Castleberry and that the city had no title or interest therein.
Thereafter the defendants in the quiet title suit (the City of Caruthersville and the members of the city council) filed their motion to abate such suit upon the ground that Cantrell and Castleberry could not be permitted to prosecute an independent quiet title suit during the pendency of the ejectment suit, but were required, under the provisions of the new civil code, Mo.R.S.A. § 847.1 et seq., to assert the matters pleaded in their quiet title suit as a counterclaim in the ejectment suit.
Acting on the motion, the court dismissed the petition and abated the cause, whereupon Cantrell and Castleberry appealed to the Supreme Court, where appellate jurisdiction lay inasmuch as the quiet title suit involved title to real estate.
The Supreme Court pointed out in its decision that under the former practice the defendant in an action in ejectment was permitted, if he so elected, to state his title by way of defense to the plaintiff's claim for possession and at the same time ask the affirmative relief of a judgment or decree determining title. However it was in no sense mandatory that the defendant do so, and unless an equitable defense was interposed, the judgment rendered in the action in ejectment was inconclusive and constituted no bar to the subsequent prosecution of another suit between the same parties for the recovery of the same land.
The Supreme Court then went on to point out that the situation had been changed by virtue of Section 73 of the new code, Laws Mo.1943, sec. 73, p. 377, Mo.R.S.A. § 847.73, which provides that a pleading shall state as a counterclaim any claim, not the subject of the pending action, which the pleader has against the opposing party at the time of filing his pleading, if such claim arises out of the transaction that is the subject matter of the opposing party's claim. In other words, Section 73 has abolished the former inconclusive effect of the judgment in an action in ejectment, so that henceforth a defendant who desires to seek the affirmative relief of a court in determining the question of title in respect to the land involved in the action in ejectment must mandatorily do so by way of a counterclaim interposed in such action or else be afterwards precluded from maintaining a suit to quiet title. It was held, however, that the effect of the decision was to be merely prospective, and that even though the action of the court in abating the quiet title suit was atcually correct, the judgment, in justice to the parties, was none the less to be reversed and the cause remanded. Cantrell v. City of Caruthersville, Mo.Sup., 221 S.W.2d 471.
On July 1, 1948, seven days before the Circuit Court of Pemiscot County entered its order abating the quiet title suit, defendants Cantrell and Castleberry filed their motion to stay further proceedings in the instant ejectment suit until the determination of the quiet title suit, which, in its broader scope, embraced the question of any right, title, or interest which plaintiff might have in the land in controversy.
*163 The Court of Common Pleas overruled such motion, and its action in such respect is now assigned as error.
Pointing out that inasmuch as the Supreme Court remanded the quiet title suit to be retried under the former practice, the judgment in the instant ejectment suit is not conclusive but still leaves the question of right of possession open to be finally adjudicated in the quiet title suit, defendants argue that irrespective of the fact that the ejectment suit was first instituted, the court should none the less have stayed its prosecution until the outcome of the quiet title suit could be determined.
There seems to be no doubt of the general rule that a court, in its discretion, may stay further proceedings in a given case upon the ground of the pendency of another action embracing the same issues, and this even though the action stayed was first instituted, where the second action will dispose of the entire controversy between the parties and the first will not. State ex rel. United States Fire Ins. Co. v. Terte, 351 Mo. 1089, 176 S.W.2d 25.
Plaintiff does not concede that such general rule should apply as between an action in ejectment and a subsequently instituted quiet title suit. But even if we assume that the court, if its discretion had so dictated, might have stayed the prosecution of the action in ejectment until the outcome of the quiet title suit could be determined, it does not follow that it abused its discretion in refusing to do so. Certainly the Supreme Court did not indicate in its decision that the action in ejectment should be stayed, but only held that in justice to the parties, and for the purposes of this litigation, the judgment rendered in the ejectment suit should not be taken as conclusive. Plaintiff had the right to bring its statutory action in ejectment, and when defendants neglected to assert their quiet title claim as a permissive counterclaim in the ejectment suit, they are now in no position to convict the trial court of error in refusing to stay proceedings in the ejectment suit after plaintiff had been put to trouble and expense in pursuing a remedy not only given it by law, but which would have disposed of the whole controversy if defendants had asserted their cause of action by way of counterclaim instead of electing to proceed independently.
For their next point defendants argue that plaintiff city, claiming only an easement in the land in question, may not maintain an action in ejectment against them as abutting owners and owners of the fee.
The fact that the fee has been retained by the abutting owner has indeed been looked upon by some courts as presenting an obstacle to the prosecution of an action in ejectment by a municipality to recover possession of a street or alley from such abutting owner. However the decided weight of authority supports the right of a municipality to maintain an action in ejectment, even though its title be only an easement. This upon the theory that in its capacity as a subdivision of the state it is charged with exclusive control over the streets and alleys within its limits, but obviously cannot exercise this control without actual possession of the same. City of Caruthersville v. Huffman, 262 Mo. 367, 171 S.W. 323. It is therefore vested of necessity with the right of possession, which, in its case, is to be regarded as a legal and not as a mere equitable right, City of California v. Howard, 78 Mo. 88; and in asserting such right it may maintain ejectment, even against the owner of the fee. 18 Am.Jur., Ejectment, sec. 16; 28 C.J.S., Ejectment, § 14, p. 861.
In fact defendants recognize the right of a municipality to sue in ejectment where it is vested with exclusive control of its streets and alleys, but contend that no such exclusive control has been given to cities of the third class in which plaintiff now belongs. In this respect they seek to distinguish the case of City of Caruthersville v. Huffman, supra, which arose at a time when the city was a city of the fourth class.
As the Supreme Court pointed out in its opinion, a city of the fourth class has been expressly vested by statute with "exclusive control over all streets, alleys, avenues and public highways within the limits of such city". Sec. 7197, R.S.Mo.1939, Mo.R.S.A. § 7197. For some reason there is no such *164 specific language to be found in the article relating to cities of the third class, without which defendants assume that cities of the third class have been denied the right of exclusive control over their streets and alleys.
Regardless of the difference in the language employed in the articles relating to cities of the third and fourth classes respectively, we are none the less convinced that cities of the third class possess the same right of exclusive control over their streets and alleys as is possessed by cities of the fourth class. It is provided by Section 6952, R.S.Mo.1939, Mo.R.S.A. § 6952, that the council of a city of the third class may prohibit and prevent all encroachments into and upon the streets and alleys of the city. The general statutes in respect to a city's right and duty to control its streets and alleys and regulate traffic thereon make no distinction based on classification. State ex rel. Audrain County v. City of Mexico, 355 Mo. 612, 197 S.W.2d 301. From all this we conclude that plaintiff's right of exclusive control over its streets and alleys is now no less and no different than that which it possessed when City of Caruthersville v. Huffman was written; and what was then said by the Supreme Court regarding the city's right to maintain an action in ejectment is equally appropriate to the case at hand.
Closely related to their contention that the remedy of ejectment does not lie where the plaintiff's title is limited to a mere easement, defendants make the further point that the judgment rendered in this case exceeded the court's statutory authority and is therefore void. Specifically their complaint seems to be that the sheriff, under pretense of delivering possession of the easement, would actually be compelled to deliver possession of the land itself, subject to defendants' rights therein.
It is true that plaintiff's only interest in the land is the right to use it as a public alley, and it is also true that in order to secure plaintiff in the relief to which it is entitled, it will be necessary to give it exclusive control over the land and oust defendants from the control which they have asserted by virtue of the erection of a permanent concrete loading platform extending out over the land at the rear of their premises for a distance of 8 feet. However such necessity in nowise militates against the propriety of the judgment.
We have pointed out that plaintiff's easement for use of the alley for public purposes, carrying with it the right to the exclusive control of the land, gives it a legal right of possession which is paramount and superior to the fee which is vested in defendants as abutting owners. The court found that plaintiff was entitled to the possession of the land for use as a public alley, and that the alley had been obstructed by the erection of the concrete loading platform to which we have referred above. Just as plaintiff says in its brief, the sheriff should find no difficulty in executing his process by causing the removal of such loading platform, which is the tangible object interfering with the use of the land for public purposes and denying plaintiff the right of possession to which it is otherwise lawfully entitled.
The final point in the case is whether the weight of the evidence supports the court's finding that plaintiff had acquired an easement in the land for use as a public alley either by common-law dedication or by prescription.
On the theory of common-law dedication, the question is whether the evidence disclosed an intent on the part of the owner or owners of the land at any time in the past to dedicate the same to public use as an alley, followed by an acceptance of such dedication by the public through such general use of the land thereafter as is usually and commonly made of alleys, and for such a period of time as would be sufficient to disclose the intention of the parties. McGrath v. City of Nevada, 188 Mo. 102, 86 S.W. 236; Connell v. Jersey Realth & Investment Co., 352 Mo. 1122, 180 S.W.2d 49; Haertlein v. Rubin, Mo. Sup., 195 S.W.2d 480.
On the theory of title by prescription, the question is whether the evidence *165 disclosed an adverse, open, notorious, uninterrupted, and exclusive use of the land as a public alley for a period of at least ten years under a claim of public right, and with the knowledge and acquiescence of the abutting owner or owners. Jacobs v. Brewster, 354 Mo. 729, 190 S.W.2d 894; Smith v. Santarelli, Mo.App., 207 S.W.2d 543; State v. Hood, 143 Mo.App. 313, 126 S.W. 992.
The strip of land in question is part of a passageway shown by the official plat to be 18 feet in width at either end, and connecting on the north with a regularly platted public alley running east and west, and on the south with what is known as Fourth Street, which also runs east and west. The passageway, which has a total length of 140 feet, was left open or created when buildings were erected on either side of it. The single building on the east side occupies the full length of the strip, and is not subdivided into stores with separate entrances as is the case with the several buildings on the west, which face the west and front on what is known as Ward Avenue. Of these the first building to the north is that of City Dry Cleaners; immediately south of it is the building of Globe Clothing Company; then comes the Traders Mercantile Company, which is owned and operated by the defendants in the present action; and at the extreme south is a building occupied by a bank. The rear of all the buildings is on a line 101 feet back from Ward Avenue except for the building occupied by Traders Mercantile Company, which extends back 81 feet 6 inches on the north and 90 feet on the south. This leaves an irregularly shaped vacant area between the rear of such building and the building line along the west side of the passageway, and it is in the northeast corner of this area, extending out 8 feet 8 inches into the passageway to be exact, that defendants, some two or three years before the trial, constructed their concrete loading platform, which necessarily obstructs the passageway to a substantial degree, and the erection of which eventually gave rise to the institution of this action in ejectment.
It appears that in 1937 the Ward-Coppage Mercantile Company, a business concern located at the place in question, conveyed to one C. C. Adams the property on the east side of the passageway, expressly reserving the east 10 feet of the passageway for use as a public alley. Long previously the Ward-Coppage Mercantile Company had conveyed the property lying west of such 10-foot strip to the then owners of the several concerns located to the west, but without any similar express reservation in the deed. Apparently the reservation was inserted in the Adams deed upon the advice of the grantor's counsel so as to avoid any warranty of title to the east 10 feet, which, as a part of the whole passageway, had long since been used by the general public for alley purposes.
The evidence is voluminous, and to set it out in great detail would serve no useful purpose. As a matter of fact, there was no great conflict between the witnesses, except perhaps as to the extent to which the strip in question had been used for storage purposes. The evidence disclosed that the whole passageway had been consistently used by the public for alley purposes for as much as fifty years after the erection of buildings along either side of it, and that the character of the use which had been made of it was in all substantial respects the same as that made of all other alleys in the city. Moreover the decided weight of the evidence was to the effect that the passageway was never used by the abutting owners for permanent storage purposes, and that such articles of merchandise as were unloaded in the passageway from time to time were merely placed there temporarily until they could be moved inside the building. The city street department had cleaned out the passageway at intervals as it did the other alleys in the city; and until the construction of defendants' concrete loading platform extending out over the west 8 feet, there had been nothing to obstruct the use of the whole passageway by any member of the general public who desired to use it except a boiler room which had been built out into the north end of the passageway at the rear of the City Dry *166 Cleaners' building, but which such company, claiming no interest as against the rights of the public, and in fact having no title whatever to the ground, had readily agreed to remove if requested to do so.
Whether plaintiff's right of possession be considered as having its basis in the creation of an easement either by common-law dedication or by prescription, the evidence abundantly supports the finding and judgment of the court.
In the absence of an express dedication, the owner's intent to dedicate may be implied, as it was in this case, by the successive owners' long acquiescence in the use of the passageway as a public alley. In fact, certain of the former owners testified that they themselves had definitely refrained from interfering with the public use of the passageway, and that they and their associates had specifically intended that the public should use it as they desired.
In addition, it appears that quite aside from any question of intent, the strip was used openly and adversely under a claim of right, with the knowledge and acquiescence of the owners, and for such a period of time as in any event to have given rise to an easement by prescription. All this occurred, of course, before defendants, some two or three years before the institution of this action, constructed the concrete loading platform out across so much of the passageway as had not been expressly reserved for public purposes in the Ward-Coppage Mercantile Company's deeds.
It is true that during all the years the city had collected taxes on the strip in question from all the successive owners, but this circumstance would not negative the city's acceptance of the easement, at least in the absence of a showing that the assessor had taken the easement into account in fixing the valuation. 26 C.J.S., Dedication, § 16, p. 71.
It follows that the judgment rendered by the Cape Girardeau Court of Common Pleas should be affirmed; and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of BENNICK, C., is adopted as the opinion of the court.
The judgment of the Cape Girardeau Court of Common Pleas is, accordingly, affirmed.
ANDERSON, P. J., and HUGHES, and McCULLEN, JJ., concur.