**BEELMAN RIVER TERMINALS, INC., Plaintiff/Appellant,**

v.

**MERCANTILE BANK, N.A., Defendant/Respondent.**

No. 65211.

Missouri Court of Appeals, Eastern District, Division Four.

July 12, 1994.

John J. Gazzoli, Jr., Theodore H. Lucas, Lewis, Rice & Fingersh, St. Louis, for appellant.

Gary Mayes, James W. Erwin, Thompson & Mitchell, St. Louis, for respondent.

AHRENS, Judge.

In this jury-tried case, plaintiff Beelman River Terminals, Inc. appeals the granting by the trial court of defendant Mercantile Bank's motion for judgment notwithstanding the verdict on plaintiff's claim of tortious interference with a contract. Plaintiff also appeals the trial court's dismissal of its ejectment claim. We affirm.

Because we affirm the judgment notwithstanding the verdict, we need not address two other trial court rulings claimed erroneous by plaintiff: 1) the conditional grant of defendant's motion for a new trial, and 2) the refusal to submit a punitive damages instruction to the jury.

This litigation arose from the construction, in 1985, of a loading dock[1] parallel to two adjacent riverfront parcels owned by the City of St. Louis and administered by the Port Authority. The loading dock was positioned in the navigable portion of the Mississippi River. On July 1, 1988, plaintiff became the leaseholder of the northern parcel and its appurtenant mooring rights. If all options were exercised, the lease term on this parcel would extend to March 17, 2010. On September 2, 1988, by deed in lieu of foreclosure, defendant took over the lease of the southern parcel and its loading dock from St. Louis Terminal, Inc. The gravamen of plaintiff's claims is that defendant's loading dock, because of its positioning, obstructs the use of approximately 165 feet of plaintiff's mooring rights.[2]

On appeal, plaintiff contends that dismissal of its ejectment claim was erroneous. When reviewing the trial court's dismissal of a claim, our duty is to determine if the facts pleaded and reasonable inferences therefrom, when viewed in the light most favorable to plaintiff, demonstrate any grounds for relief. *Volume Services, Inc. v. C.F. Murphy & Assoc.*, 656 S.W.2d 785, 789 (Mo.App.1983). Plaintiff contends ejectment is a proper remedy here because defendant possessed plaintiff's mooring rights.

By statute, an ejectment claim constitutes an action for the recovery of possession of premises and may be maintained in all cases where the plaintiff is legally entitled to the possession thereof. § 524.010, RSMo 1986. The right to possession of a property interest is a fundamental element in an ejectment claim. *Gilbert v. K.T.I.*, 765 S.W.2d 289, 293 (Mo.App.1988). In Missouri, the interest sought to be recovered in an action for ejectment must be of a tangible nature and must be capable of being delivered by the sheriff. *Id.* Incorporeal hereditaments are defined as "anything, the subject of property, which is inheritable and not tangible or visible." Black's Law Dictionary, sixth edition. Therefore, ejectment is generally an improper remedy for recovery of an incorpo

---

1. The loading dock consisted of two floating barges positioned end-to-end that were secured by three dolphins or cement buoys.

2. Although there is no dispute as to position of the loading dock, the parties disagree as to whether the dock inhibits plaintiff's ability to moor boats at the southern tip of its leased property. For purposes of review, we will assume that the dock does obstruct plaintiff's mooring rights. At the time of trial, plaintiff had incurred increased operating expenses of approximately $225,000 due to the loss of use of the obstructed mooring rights. Plaintiff stands to lose an estimated $4,525,000 in increased operating expenses over the remainder of the lease.

real hereditament.[3] *Gilbert,* 765 S.W.2d at 293.

Mooring rights, like other riparian rights, are in the nature of incorporeal hereditaments. 93 Corpus Juris Secundum 612 (Francis J. Ludes et al. eds., 1956); *Niagara Mohawk Power Corp. v. Cutler,* 109 A.D.2d 403, 492 N.Y.S.2d 137 (1985); *Davidson v. Vaughn,* 114 Vt. 243, 44 A.2d 144 (1945). Mooring rights, both at common law and through plaintiff's lease, encompass two separate riparian rights: the right of access and the right to "wharf out." The right of access includes the right to proceed without unreasonable impediment to and from the navigable portion of the river. 1 Water and Water Rights 90–91 (Robert E. Beck ed. 1991). The right to "wharf out" includes the right to construct and maintain a structure by which vessels can attach themselves to land in order to conveniently load or unload. *Id.* at 99. Both of these rights entitle riparian owners to a limited use or enjoyment of the navigable waterway bordering their property. These rights do not grant, however, possession of any part of the surface waters to the riparian owners. Mooring rights, therefore, are nonpossessory interests which can not be recovered by bringing an ejectment claim.[4]

Plaintiff contends that *City of Caruthersville v. Cantrell,* 230 S.W.2d 160 (Mo.App. 1950), created an exception to permit municipalities to bring an action for ejectment to recover nonpossessory property interests. In *Cantrell,* the court held that the City of Caruthersville could maintain an action for ejectment and force the removal of a loading platform from a private alleyway even though the City only had an easement in the alleyway. *Id.* The court reasoned that the State had charged the City with control of all alleyways and therefore the City needed possession of the alleyway in order to exercise this control. *Id.* Plaintiff argues that it, as the City's successor in interest, can force the

removal of defendant's loading dock from state waters even if plaintiff is merely protecting a nonpossessory riparian right because the City of St. Louis is charged with control of the river between the low-water mark and the centerline. *State ex rel. Citizens' Electric Lighting & Power Co. v. Longfellow,* 169 Mo. 109, 69 S.W. 374, 379 (1902). We disagree.

Both alleyways and waterways are controlled by the City of St. Louis in trust for the people. *Cantrell,* 230 S.W.2d at 164; *Longfellow,* 69 S.W. 374 at 379. Unlike the instant case, however, in *Cantrell* the City was acting in its capacity as trustee for the benefit of the people. Here, plaintiff asks us to extend the holding in *Cantrell* to protect its private interests. To do so, however, would be to endow the City with a power not granted to it by the State. Count VI of plaintiff's amended petition, which brings an action for ejectment, fails to state a claim for which relief can be granted. Point denied.

Plaintiff also contends that the trial court erred in granting defendant's motion for judgment notwithstanding the verdict regarding plaintiff's claim for tortious interference with a contract or business expectancy. "A motion for a judgment notwithstanding a verdict presents the same question as a motion for a directed verdict at the close of all the evidence; i.e. whether the plaintiff made a submissible case." *School District of the City of Independence, Missouri, No. 30 v. U.S. Gypsum Co.,* 750 S.W.2d 442, 445–46 (Mo.App.1988). Therefore, we review the evidence in the light most favorable to plaintiff giving plaintiff the benefit of all reasonable favorable inferences and disregarding defendant's evidence except insofar as it may aid plaintiff's case. *Id.* at 446. However, we do not supply missing evidence or give the plaintiff the benefit of unreasonable, speculative or forced inferences. *Nettie's Flower*

---

3. After stating that an easement was intangible and incapable of delivery, the *Gilbert* court held that interference with or obstruction of an easement constituted a nuisance. *Gilbert,* 765 S.W.2d at 294.

4. Although Missouri courts have never addressed this issue, other states have permitted nuisance

actions or claims for injunction to be brought to protect riparian rights. *Woods v. Johnson,* 241 Cal.App.2d 278, 50 Cal.Rptr. 515 (1966); *McGibney v. Waucoma Yacht Club,* 149 Conn. 560, 182 A.2d 622 (Ct.1962); *Board of Trustees v. Medeira Beach Nominee, Inc.,* 272 So.2d 209 (Fla.App. 1973).

*Garden v. Sis, Inc.,* 869 S.W.2d 226, 231 (Mo.App.1993).

Defendant became aware of the encroachment problem by mid-September, 1988. In an internal memorandum dated October 7, 1988, Jeanne Gieseke, one of defendant corporation's vice presidents, suggested four options for solving this encroachment problem, including, but not limited to, "enlist[ing] the help of the City ... through contact with individuals at the Economic Development Corporation, such as Denny Coleman, [a former employee of defendant]. The Economic Development Corporation oversees the St. Louis Port Authority.... [T]he City of St. Louis has the power, under ordinance, to *terminate or modify existing leases,* ... [such as] its lease with [plaintiff]."

After the parties' attempts to resolve their dispute through negotiation reached an impasse, plaintiff asked Port Authority to intervene. On July 13, 1989, believing that defendant's dock illegally encroached upon plaintiff's mooring rights, Port Authority requested defendant to vacate the "encroachment by removal of the captive barge." Port Authority also suggested, in the alternative, that the mooring rights in question be transferred from plaintiff's leasehold to defendant's leasehold and that the rent paid by the parties on their respective leases be adjusted accordingly.

On August 8, 1989, defendant answered Port Authority's request by denying encroachment upon plaintiff's mooring rights and by displaying interest in pursuing the alternate solution suggested by Port Authority. Defendant followed up this answer on September 13, 1989, with a letter to Dennis Coleman. At the time of the letter, Mr. Coleman, former employee of defendant, was the Executive Director of the Economic Development Corporation, the City agency that oversees the Port Authority. The letter explained the legal basis for defendant's denial of encroachment and strongly expressed defendant's refusal to remove the loading dock. The letter also stated that defendant "is prepared to defend any action by any party which seeks to limit its use of the [loading dock]." A copy of this letter was sent to Thomas Jacobsen, defendant's CEO, in preparation for his meeting with the Mayor the following week.

Port Authority then ceased its attempts to compel defendant to remove the loading dock. Instead, Port Authority sought to have plaintiff voluntarily surrender the mooring rights. Plaintiff refused. Thereafter, Port Authority began pursuing an alternate course of action.

On October 24, 1989, Port Authority decreased plaintiff's monthly rent by an amount equivalent to the rent on the encroached upon mooring rights and sent plaintiff a rent abatement check for that amount. Finding this solution unsatisfactory, plaintiff returned the rent abatement check and continued to pay the entire rental amount specified in the lease. Furthermore, plaintiff reiterated its request to have Port Authority give plaintiff the mooring rights agreed upon in the lease. This pattern continued for several months with plaintiff paying the entire rent, Port Authority mailing back part of the rent and plaintiff returning the rent abatement check. Finally, in January 1990, Port Authority set up an escrow account in which it deposited the rent abatement checks. Port Authority continued to make these monthly deposits at the time of trial.

■■■ Plaintiff contends that it introduced sufficient evidence to make its claim of tortious interference with contract submissible to the jury. For a claim to be submissible, plaintiff must introduce substantial evidence of every element of the claim. *Nettie's,* 869 S.W.2d at 231. A mere scintilla of evidence is insufficient. *Allison v. Sverdrup & Parcel & Associates,* 738 S.W.2d 440, 455. Whether evidence is substantial is a question of law. *Nettie's,* 869 S.W.2d at 231.

■■■ A claim for tortious interference with a contract or business expectancy requires plaintiff to prove each of the following: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct. *Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n,* 796

S.W.2d 369, 372 (Mo.1990). As one of these elements, "absence of justification", is dispositive, we address only that element.

Plaintiff carries the burden of proving absence of justification. *Id.* Protecting one's economic interests constitutes justification for interference with a contract or business expectation unless one employs improper means to protect that interest. *Id.* Improper means are those means which are independently wrongful notwithstanding injury caused by the interference. *Id.* at 373. Such wrongful means include misrepresentation of fact, threats, violence, defamation, trespass, restraint of trade or any other wrongful act recognized by statute or the common law. *Id.*

 No evidence was presented by plaintiff indicating that defendant created the encroachment problem. The encroaching loading dock was constructed three years prior to either defendant acquiring an interest in the loading dock or plaintiff acquiring an interest in the mooring rights which are being encroached upon. Defendant was merely trying to protect its economic interests in the use of the loading dock. Removal of the dock would decrease the value of defendant's leasehold property which defendant wanted to sell. Furthermore, defendant was legitimately attempting to avoid the expense, estimated at $200,000, of replacing the encroaching loading dock with a shorter, non-encroaching dock.

Moreover, plaintiff did not produce substantial evidence that defendant employed any improper means to protect its legitimate economic interests. The only means utilized by defendant were negotiations with plaintiff and presentation to City officials of the legal basis for defendant's denial of encroachment upon plaintiff's mooring rights. Plaintiff asks us to find that merely producing evidence that defendant presented its side of the encroachment problem to City officials and that Port Authority's stance on the encroachment problem changed after this presentation is substantial evidence that defendant used improper means to protect their economic interest. Even when viewed in the light most favorable to plaintiff, such an inference would be too speculative as a matter of law. Plaintiff failed to prove the necessary element of absence of justification. Point denied.

Judgment affirmed.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.