**Leona MUCKENTHALER, Plaintiff-Appellant,**

v.

**C. S. EHINGER, Defendant-Respondent,**

**James E. Anderson, Defendant.**

**No. 51649.**

Supreme Court of Missouri,
Division No. 1.

Dec. 12, 1966.

Rehearing Denied Dec. 30, 1966.

Robert L. Shirkey, Kansas City, for appellant.

Lucian Lane, Tucker, Murphy, Wilson, Lane & Kelly, Kansas City, for respondent Ehinger.

HYDE, Judge.

Action for wrongful death. Plaintiff had verdict for $25,000.00. Defendant Ehinger's motion for new trial was sustained and plaintiff has appealed. Defendant Anderson has not appealed.

Plaintiff's husband was killed in a collision between his car and a truck owned by defendant Anderson on August 12, 1959. The principal issue is whether Anderson was an employee of Ehinger. Ehinger claims the evidence was insufficient to show he hired Anderson but if it was it shows as a matter of law that Anderson was an independent contractor. The negligence of Anderson in running through a red stop signal is not an issue on this

appeal. He claimed his brakes went out completely.

Ehinger had a contract with the State Highway Department to remove houses from the right of way acquired for Interstate Highway 70. Anderson had previously driven a dump truck for L. G. Williams in other work Williams had done for Ehinger. Thereafter Anderson bought a dump truck and did work with it for several contractors on a contract basis, driving the truck himself. Anderson said that about two weeks after he bought the truck he told Ehinger about it and asked if he would hire him. He said Ehinger told him he would have to get in touch with Bill (William D. Brown, Ehinger's superintendent) that "he's the one that does the hiring." Ehinger denied ever having any such conversation and said Brown had no authority to hire a truck that had never been hired before by him. Brown testified that about two weeks prior to August 12, 1959, Anderson called him by phone, identified himself as one who had driven for L. G. Williams, stated that he now owned a White tandem truck, and asked whether Ehinger would hire him. An offer of proof was made to show that Brown asked him whether he carried liability insurance on the truck; that Anderson said he did not; and that Brown then told him that Ehinger would not hire his truck. This testimony was not permitted; Brown was only permitted to say he told Anderson that Ehinger required certain qualifications and that Anderson was not qualified. Anderson said he did not call Brown prior to August 12, 1959, because he was busy on other jobs. Anderson testified that about 6:45 on the morning of August 12, 1959, he called Ehinger's number and someone answered at the other end. Anderson asked "Is this Bill?" and the other person said "Yes." Anderson then told him he used to drive for L. G. Williams; and the person answering told him to go to 28th and Norton, to be there at 8:00 and to haul out to Little Robert's on Old Highway 40, a salvage yard. Nothing was said about the rate of pay or terms or conditions of hiring the truck, but An-

derson said he knew the pay was seven dollars per hour. Brown denied that he ever received any such telephone call from Anderson, or that he ever talked with Anderson at any time on August 12, 1959.

Anderson did appear at the place and time stated, his truck was loaded by Ehinger's high loader operator and he drove away with the load. He never reached the unloading point because he was involved in the collision a few blocks away from the loading point. Ehinger was notified of the collision by Brown, who had been notified by another driver, went to the scene and had one of his own trucks come to clean up the debris from the street. Ehinger had a city permit for hauling through that street and was required to clean up debris on it. His claim was that Anderson was hauling without authorization; but a witness Jones who investigated the collision on the day it occurred said that both Brown and Ehinger told him then that Anderson was driving a truck for them, "hauling dirt on a construction job of some sort." Our conclusion is that we must hold the jury reasonably could have believed Anderson's testimony about his employment and that it was sufficient to show that he was hired. This leaves the issue of whether there was sufficient evidence to show that Anderson was an employee or must be held to have been an independent contractor only.

On this issue, Anderson's testimony was that when he drove for Williams he was paid two dollars per hour out of which Williams took his Social Security and tax withholding. As to his understanding of terms with Ehinger he testified that he was to maintain the truck, pay all repairs on it and pay for all oil and gasoline; and that he hired himself out with his truck at so much per hour. (At that time Ehinger paid seven dollars per hour.) Anderson never received any pay from Ehinger because he never completed a trip. Ehinger says this case is exactly like Talley v. Bowen Construction Co., Mo.Sup., 340 S.W.2d 701, citing also Williamson v. Southwestern Bell Telephone Co., Mo.Sup.,

265 S.W.2d 354, and Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S.W.2d 918. Plaintiff relies on Madsen v. Lawrence, Mo.Sup., 366 S.W.2d 413, involving similar operations to those herein involved. Our view is that the situation here is more like that in the Madsen case than the others and that the evidence was sufficient to authorize a finding of the right of control in Ehinger over Anderson. In this case, the hours of work were designated. The drivers were to start at 8:00 A.M. and stop at 4:30 P.M. with thirty minutes allowed for lunch. There could be no loading during the lunch period. (It was said these hours were fixed by agreement with the Teamsters Union.) Ehinger said the trucks and drivers "were hired or called or rented on a day to day basis" and that if there was any objection to them or their equipment was not functioning properly they would not be engaged for the next day. If the job was finished by noon or if it rained, they would not be called back that day. Ehinger said: "They are dispatched every day to whatever location we want them."

The drivers were directed as to the route they should take because Ehinger was paying them by the hour and wanted them to take the shortest route to get as many trips out of them as he could. If a driver "didn't show back in line every load or two * * * he would possibly be questioned or we would no longer use him." Ehinger also got a dollar and a half for each load delivered at the salvage yard. The high loader operator determined the load to put on each truck and would notify the driver when to move on by signals given by hand or with the high loader motor. The operator said he had seen Brown tell truck drivers what to do. Ehinger had operations under way at other locations and Brown "could and did dispatch those trucks (working at one location) to go some place else and haul", if for any reason he could not use them at the place they had started to work, or he could lay them off. They were paid on a weekly basis and at the end of each day were given a slip by the high loader operator showing time worked which they left with Ehinger's bookkeeper. The pay went to the owner of the trucks regardless of how many trucks he owned. There was no withholding for taxes or Social Security from these payments. In the Madsen case, where owners of trucks were employed to haul away dirt, we said (366 S.W.2d l. c. 419): "The service of the truck drivers had been regularly used by defendant. Defendant or his employee Sims kept track of the truck drivers' time; equalized the work among them; told them the hour they were to report for work in the morning and in effect, told them how long they were to work that day and whether they were to report for work the next day. It reasonably could be inferred that the physical work and conduct of the truck drivers in its performance were commanded, managed, directed and controlled (verbally, by signal, and by directing manipulation of the excavating machine) by defendant Lawrence or his employee Sims, and that inferentially the truck drivers were subject to the right of control of defendant Lawrence." We hold the jury reasonably could find such a situation here with even greater right and exercise of control than shown in the Madsen case and that the court properly refused to direct a verdict for defendant.

■ The court granted a new trial on grounds of error in refusing to admit testimony that Ehinger had an established rule, of which Anderson was told, requiring independent truck owners as a condition of hiring to carry liability insurance and to furnish him with certificates of such insurance; and in refusing to permit Brown to testify that he had a conversation with Anderson about hiring him some time prior to August 12, 1959, in which Anderson told him he did not have liability insurance on his truck and Brown told him Ehinger would not hire his truck for that reason. Our view is that this evidence was admissible as material on the issue of whether Anderson was employed by Brown for Ehinger. In State ex rel. Cummings v.

Witthaus, 358 Mo. 1088, 219 S.W.2d 383, 389, 8 A.L.R.2d 1124, where the issue was whether a driver was an employee or an independent contractor, we said in determining the admissibility of evidence of liability insurance: "[T]he courts apply the simple test of whether it *tends* to prove an issue. If the particular evidence does *tend* to prove an issue formed by the pleadings, that evidence cannot be excluded merely because it may also tend to show that some one carried liability insurance on the particular motor vehicle, or any motor vehicle." We held the fact there was such insurance was admissible in that case, quoting 85 A.L.R. 784, as follows: "'If an issue in the case is as to whether the plaintiff was a servant of defendant or servant of an independent contractor, evidence is admissible that the defendant carried indemnity insurance on his employees, including the plaintiff, such evidence having been treated in some cases as having a tendency to negative the independence of the contract, or, in other words, as having a tendency to show the plaintiff was considered by the defendant as his employee.'" See also Boten v. Sheffield Ice Co., 180 Mo. App. 96, 166 S.W. 883; Nuckols v. Andrews Investment Co., Mo.App., 364 S.W. 2d 128; Eldridge v. McGeorge (USCA 8th), 99 F.2d 835, 841; Annotation, 4 A.L.R.2d 761, 776; 20 Am.Jur. 351, Evidence, Sec. 390. We think the fact of a requirement of insurance for hiring trucks did tend to prove an issue in this case. This testimony as to Ehinger's requirement for hiring truck owners and Brown's statement to Anderson about it was material and important not only on the issue of whether Anderson was ever hired but also if he was whether he was an employee or an independent contractor. It was error to exclude it and we agree with the trial court's view that this error was prejudicial. Other matters raised are not likely to arise at another trial.

The order granting a new trial is affirmed.

All concur.