Michael J. GILBERT and Laura B. Gilbert, Respondents,

v.

K.T.I., INC., Appellant.

WD 40364.

Missouri Court of Appeals, Western District.

Dec. 13, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 31, 1989.

Application to Transfer Denied March 14, 1989.

Danieal H. Miller, of Cleaveland & Miller, Columbia, for appellant.

Thomas M. Dunlap of Whitlow, Riley, Mariea & Dunlap, P.C., Fulton, for respondents.

MANFORD, Judge.

Plaintiffs-respondents, Michael and Laura Gilbert, (hereinafter respondents) filed a Petition for Temporary Restraining Order, Preliminary Injunction and Injunction requesting the trial court to restrain and enjoin defendant-appellant, K.T.I., Inc., (hereinafter appellant) from interfering with respondents' use of an easement over the property of appellant. The Petition also sought actual and punitive damages for the interference of the easement. The trial court entered a temporary restraining order and Permanent Injunction ordering appellant to remove the obstacles which interfered with the easement. The issue of damages was presented to a jury which returned a verdict awarding respondents $3,200.00 actual damages and $10,000.00 punitive damages. Judgment was entered and this appeal followed.

This dispute centers around an easement over a stairway situated between two adjacent, two-story buildings on Court Street in Fulton, Missouri. The buildings had a common source of title in William S. Maerz. Maerz sold the building located at 403 Court Street to respondents. Maerz retained ownership of the building at 401 Court Street, but granted respondents an easement. That easement is a non-exclusive easement over, across and by use of a stairway located to the south of the frontage of the building at 403 Court Street. The stairway provides access to the second floor of the building at 403 Court Street and to the second floor of the adjoining building at 401 Court Street.

Maerz sold the building located at 401 Court Street to appellant's predecessor in title. The building was eventually purchased by appellant.

Respondents used the second floor of the 403 Court Street Building as rental property. In June, 1986, respondents were denied access to the stairway. Appellant replaced the old door at the bottom of the stairway on the first floor with a metal door containing a dead-bolt lock and a regular entrance door lock. Respondents requested, but were not given, the keys needed for access. At the top of the stairway on the second floor, appellants constructed a brick wall, thereby filling in the doorway entrance to the second floor of the building at 403 Court Street. Respondents were unable to use the easement over the stairway from June 16, 1986 through February, 1987 and, consequently, were unable to rent the apartments on the second floor of their building.

Appellant raises four points on appeal which charge, in summary, that the trial court erred in (1) instructing the jury with a verdict director modified from M.A.I. 27.-03; (2) overruling appellant's motion for a directed verdict on the issue of punitive damages; (3) denying appellant's motion for mistrial based on opposing counsel's remarks regarding the presence of insurance coverage; and (4) denying appellant's motion for mistrial based on opposing counsel's references to the size, wealth and corporate status of appellant.

Appellant's first point contends that the trial court erred in giving Instruction No. 6, M.A.I. 27.03 Modified, as a verdict director. Respondents tendered Instruction No. 6, fashioned after the model approved instruction for ejectment-damages only, in the following format:

Your verdict must be for Plaintiffs if you believe:

First, Defendant was in possession of the premises claimed by the Plaintiffs on June 16, 1986, and

Second, Plaintiffs had the right to access to the premises on said date by reason of

Plaintiffs' ownership of an easement over and across said premises, and

Third, Defendant had knowledge of Plaintiffs' claim to access to the premises on June 16, 1986, and

Fourth, Defendant denied Plaintiffs access to the premises thereafter.

Appellant objected to Instruction No. 6 on the grounds that the court had no basis under the pleadings or evidence to give it, there was no legal basis because the instruction was not a fair statement of the law, and the instruction was not justifiable under the facts. All objections were overruled without comment by the trial court. Appellant did not submit proposed instructions.

■ At issue is whether this modified ejectment instruction was proper in this action based on the obstruction of an easement. Ejectment is a possessory action testing the right to possession of real property. *Polette v. Williams*, 456 S.W.2d 328 (Mo.1970), appeal after remand, 496 S.W.2d 340 (Mo.App.1973); *City of St. Charles v. DeSherlia*, 303 S.W.2d 32 (Mo.1957), transferred to 308 S.W.2d 456 (Mo.App.1957). By statute, an action for the recovery of the possession of premises may be maintained in all cases where the plaintiff is legally entitled to the possession thereof. § 524.010, RSMo 1986. Ejectment does not depend on title for relief; the criterion is the right to possession. *First National Bank of Cape Girardeau v. Socony Mobil Oil Co., Inc.*, 495 S.W.2d 424 (Mo.1973). Such a cause of action is defeated, regardless of the ownership of real estate, if plaintiffs do not have, at the time the action is commenced, a right to possession. *Harris v. L.P. and H. Constr. Co.*, 441 S.W.2d 377, 383 (Mo.App.1969). Relief in an ejectment suit may be a judgment for possession and damages. *Corbin v. Galloway*, 382 S.W.2d 827, 829 (Mo.App.1964).

■ Ejectment will lie for any corporeal hereditament of which the sheriff can deliver possession. *Kirk v. Mattier*, 140 Mo. 23, 41 S.W. 252, 254 (1897). The estate or interest sought to be recovered in an action of ejectment must be of a tangible or visible nature, thus, the rule that ejectment is not ordinarily maintainable for the recovery of an incorporeal hereditament which is incapable of physical delivery. 25 Am. Jur.2d Ejectment § 6 (1966); 28 C.J.S. Ejectment § 6 (1941).

■ An easement is a nonpossessory interest; it is an interest in the land in the possession of another which entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists. Restatement of Property § 450 (1944); *Jacobs v. Brewster*, 354 Mo. 729, 190 S.W.2d 894 (1945); *Farmers Drainage Dist. v. Sinclair Refining Co.*, 255 S.W.2d 745 (Mo.1953). The easement owner who finds it necessary to resort to the courts for protection of his easement is debarred from actions traditionally established for the protection of a possession, such as trespass, writ of entry and ejectment, because the easement owner does not have the prerequisite possession. 3 Powell on Real Property, Easements ¶ 420, p. 34–231. The Missouri Supreme Court has ruled that an action of ejectment does not lie for a mere right of way, nor can ejectment be brought for a mere easement in any case because an easement is intangible and incapable of delivery by the sheriff.[1] *Brier v. State Exchange Bank*, 225 Mo. 673, 125 S.W. 469, 473 (1910). Although the *Brier* case occurred years ago, its facts are very similar to those in the instant case. In *Brier*, a "partnership stairway" existed between two adjacent, two-story buildings. Plaintiffs were granted an easement to use the stairway. The stairway easement became obstructed when the defendant bank made improvements to its building by erecting a

---

1. An exception to the general rule has developed to allow a municipality to maintain an action in ejectment, even though its right to possession is only by an easement, *see City of Caruthersville v. Cantrell*, 230 S.W.2d 160 (Mo.App.1950). The exception is based upon the theory that in its capacity as a subdivision of the state, the municipality is charged with exclusive control over the streets and alleys within its limits, but obviously cannot exercise this control without actual possession of the same. *Id.* at 163. The exception is not applicable to the instant case which does not involve a municipality as a party.

large granite pillar directly in front of the partnership stairway entrance. Ejectment, however, was not a proper remedy to remove the obstructing pillar or to recover enjoyment of the easement over the stairway. The *Brier* holding directly applies to the instant case.

■ Appellant is correct in the contention that Instruction No. 6 based on ejectment was not legally correct in the instant case. Ejectment is not a proper cause of action in a suit for damages from the interference or obstruction of an easement because an easement is a nonpossessory interest. The jury should not have been instructed with Instruction No. 6, a modification of M.A.I. 27.03, based on ejectment-damages only.

■ Liability for damages from the interference or obstruction of an easement is a nuisance and a jury should be instructed accordingly. The law of nuisance seeks to resolve disputes arising from conflicts between landowners over uses of land. An interference with or obstruction of an easement is a nuisance. *Mondelli v. Saline Sewer Co.*, 628 S.W.2d 697, 699 (Mo.App. 1982).

■ If a Missouri Approved Instruction is applicable, such instruction must be given to the exclusion of all others. *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 206 (Mo. banc 1983). In this case, it was error to instruct the jury on ejectment using M.A.I. 27.03 when the correct substantive instruction would have been nuisance based upon M.A.I. 22.-06. The prejudicial effect of the error is subject to judicial assessment. Rule 70.-02(b), V.A.M.R. The Missouri Supreme Court stated in *Fowler v. Park Corp.*, 673 S.W.2d 749, 756 (Mo. banc 1984), courts should reverse only for defects of substance with substantial potential for prejudicial effect. *Id.* at 755–56. Therefore, instructional error is no longer an automatic ground for reversal; it stands as a ground for reversal only when the record on appeal indicates substantial prejudice. *Johnston v. Allis–Chalmers Corp.*, 736 S.W.2d 544, 547 (Mo.App.1987).

Before further addressing the arguments by the parties on whether the trial court error in giving the verdict-directing instruction based on an ejectment was prejudicial, it must be noted that Instruction No. 6 deviated from the approved M.A.I. 27.03 format for ejectment-damages only. Strict compliance with M.A.I. 27.03 would generate a verdict director as follows:

Your verdict must be for plaintiff if you believe:

First, defendant was in possession of the premises claimed by plaintiff on (state date action for ejectment was commenced), and

Second, plaintiff had the right to *possession* of the premises on that day by reason of (state basis of right to possession), and

Third, defendant had knowledge of plaintiff's claim to *possession* of the premises on (insert date), and

Fourth, defendant remained in *possession* thereafter.

(emphasis added)

However, in this case, M.A.I. 27.03 was not given in the above format. Instruction No. 6, *supra,* substantially modified the second, third and fourth elements of M.A.I. 27.03 by substituting the word "access" for the word "possession". Additionally, the modification to the second element eliminated the right to possession and the basis of the right to possession, and instead substituted the words "right to access" the premises "by reason of Plaintiff's ownership of an easement over and across said premises." Clearly, the modifications tendered by respondents and given by the court indicate an awareness that M.A.I. 27.03 without such modifications would be incorrect because respondents had no right to possess the building or premises through which their easement ran. The modifications were an attempt to properly describe the conflicting property interests and to adapt an ejectment instruction to the particular circumstances in this case where respondents proceeded on a claim of denial of access to the premises by reason of an obstruction of or interference with an easement—a nuisance. The modifications elimi-

nated much of the potential to confuse or mislead the jury with a standard ejectment instruction by tailoring the elements to the facts of the case and focusing on a right to access the premises rather than a right to possess the premises. Now, with the modification of the instruction noted, this court will proceed to consider the arguments of the parties to determine if the giving of Instruction No. 6 was prejudicial error requiring reversal of the judgment.

■ Respondent argues that any error in the verdict-directing instruction was not prejudicial because appellant engaged in "sandbagging". Sandbagging is the practice in which counsel remains silent at the instruction conference with the hope that his opponent will request an erroneous jury instruction. *See Fowler, supra,* 673 S.W. 2d at 756; *Points v. Dzur,* 713 S.W.2d 634 (Mo.App.1986); *Johnston v. Lerwick,* 738 S.W.2d 868 (Mo.App.1986). *Fowler* states that Rule 70.03 V.A.M.R. condones sandbagging in that contemporaneous objections to instructions are not required to preserve claims of legal error. *Fowler,* 673 S.W.2d at 756. But, *Fowler* also warns that one who is deliberately silent in the face of instructional error related to a deviation from M.A.I. runs the risk that the court will find the error not prejudicial so as to require reversal, *Id.* at 757.

■ Counsel for appellant is wrongly accused of sandbagging. This is not a case in which counsel for appellant remained silent. A specific objection to the verdict-directing instruction was made by counsel on the record at the instruction conference. Counsel identified the verdict-directing instruction by its number, objecting to it on the grounds that there was lacking any basis in the pleading, evidence or law for the instruction, and the instruction was not a fair statement of the law. It cannot be said that appellant's counsel withheld all objections to Instruction No. 6, thereby sandbagging an improper jury instruction as was done in *Fowler.* Although respondent may criticize counsel's objections to Instruction 6 because the objections could have been more artfully worded, respondent will not succeed in arguing that counsel for appellant deliberately stood silent in the face of instructional error.

Respondent further argues that even if the trial court erred in giving the verdict-directing instruction, appellant waived its objection to the instruction by failing to specifically object to it. Counsel for appellant stated his objections on the record during the instruction conference by saying:

Judge, I am going to object to Instruction No. 6 purely and simply by virtue of the fact that it is not a—the Court has no basis under the pleadings or the evidence to—in order to give it in this case, nor is there any legal basis whatsoever to provide for the giving of Instruction No. 6. Simply—its (sic) just not a fair statement of the law, nor is it justifyable (sic) under the facts of this case.

Respondent asserts that this objection was so general and nonspecific that it is equal to silence and, hence, constitutes a waiver of instructional error. Respondent relies on two cases to support this assertion, *Points, supra,* and *DeClue by DeClue v. Murrell,* 717 S.W.2d 237 (Mo.App.1986).

These two cases involve instances of sandbagging or waiver in which counsel stood silent or made no objection at the instruction conference. As previously discussed, respondent is incorrect in asserting that appellant's counsel in this case stood silent or waived any objections to the instructions. Likewise, the objection was not so lacking in specificity as to equate to silence.

■ The *Points* and *DeClue* cases, however, also stand for the rationale that while contemporaneous objections to instructions are not required under Missouri rules to preserve claims of legal error, a failure to request a modification may be considered by reviewing courts in determining the presence of prejudice. The *Points* court explained,

"The result in *Hudson v. Carr, supra,* [668 S.W.2d 68 (Mo.banc 1984)] and *Fowler v. Park Corp., supra,* has been to cast upon the appellate courts the obligation to evaluate the motives and intentions of counsel in utilizing and relying on the language of Rule 70.03.

\* \* \* \* \* \*

If a defect is not readily apparent to alert counsel preparing to argue the case, there is very little likelihood that the jury will be confused or misled. Counsel should think twice before simply putting perceived deviations from MAI or the Notes On Use into the error bag, instead of asking for a more satisfactory instruction."

*Points,* 713 S.W.2d at 635.

This court is of the opinion that the defect in Instruction No. 6 was readily apparent to appellant's counsel during the instruction conference, and that counsel, instead of requesting a more appropriate and satisfactory nuisance instruction, argued the elements of a nuisance case to the jury while putting the deviation from M.A.I. into the error bag for purposes of appeal, if an appeal became necessary. Appellant's counsel told the trial court that the modified ejectment instruction was not a fair statement of the law governing this case, but .did not tender a proper alternative instruction. Counsel for appellant admitted during oral arguments before this court that he knew at the time of the instruction conference that the verdict-directing instruction the court would proceed to read was erroneous, but purposefully did not assist in correcting the error because he believed it was solely his opponent's obligation to tender the proper jury instructions. Finally, appellant's reply brief indicates that there is nothing in recent cases indicating that one is responsible for his opponent's instructions, and that sandbagging is alive and well as long as counsel is clever about it.

Furthermore, the closing argument may be examined to determine whether erroneous instructions had a likely prejudicial impact. *Fowler,* 673 S.W.2d at 756, citing *Welch v. Hyatt,* 578 S.W.2d 905 (Mo. banc 1979). Appellant claims that the modified verdict-directing instruction which was read to the jury failed to include as a final provision the nuisance requirement that the jury determine whether such use by appellant of its property was unreasonable. In sum, appellant argues that the lack of such a provision in the verdict-directing instruc-

tion created substantial prejudice because the jury was unable to balance the rights of the adjoining landowners. Indeed, M.A. I. 22.06, the approved instruction for private nuisance, instructs the jury to enter a verdict for the plaintiff if it believes: (1) plaintiff used his property, and (2) defendant used his property in a manner which is claimed to be a nuisance, (3) thereby impairing plaintiff's use of his property and (4) such use by defendant of his property was unreasonable. Clearly, Instruction No. 6 did not require the jury to determine whether appellant's use of the property was unreasonable.

However, a recurring theme throughout counsel for appellant's closing argument to the jury was the reasonableness of the acts of the appellant corporation through its employees. Counsel for appellant told the jury during closing arguments that their common sense and good judgment were more important than the jury instructions. Counsel explained what he considered to be mistakes in an older deed of trust prepared by respondent's attorney, simply concluding that "life is full of mistakes." Counsel then reasoned that the employee of appellant who saw the (allegedly) mistaken older deed rather than the new deed acted "pretty darn reasonable" in denying access to the stairway on the premises because the employee knew that the property had changed hands since the older deed was written. At the heart of the argument was the message that the employee acted reasonably in denying such access when measured against the previous mistakes made by several lawyers involved in the case. Also injected to support the theme that appellant acted reasonably was the comment that respondents were "stuck" with the situation in the stairway because a former tenant of their building at 403 Court Street had previously misused the easement. An inference from the comment is that appellant acted reasonably in denying access to the current owners because someone other than them, to wit, a former tenant, acted unreasonably beforehand. Finally, counsel for appellant submitted to the jury that any decision made by appel-

lant or its employees under the circumstances of this case was not unreasonable.

Closing arguments by counsel for appellant greatly weakens the argument on appeal that defects in the verdict-directing instruction were of such a nature as to create a substantial prejudicial effect. Counsel for appellant urged the jury to balance the rights of these adjoining landowners to determine the reasonableness of appellant's acts in reaching its verdict.

Respondent argues that the reasonableness of appellant's use of its property was placed before the jury by Instruction Nos. 8 and 9. Instruction No. 8 instructed the jury on an award of punitive damages as follows:

> If you find the issues in favor of Plaintiffs, and if you believe the conduct of Defendant as submitted in Instruction No. 6, was wilful, wanton, or malicious, then in addition to any damages to which you will find Plaintiffs entitled under Instruction No. 7, you may award Plaintiffs an additional amount as punitive damages in such sum as you believe will serve to punish Defendant and to deter Defendant and others from like conduct.

Thus, the jury was instructed that it could award punitive damages if it found appellant's conduct referenced in Instruction No. 6 (the knowledge of a claim to access to the premises and denial of access to the premises) was wilful, wanton or malicious. Instruction No. 9 defined malicious as follows:

> The term "malicious" as used in these instructions does not mean hatred, spite or ill will, as commonly understood, but means the doing of a wrongful act intentionally without just cause or excuse.

Respondents argue that by returning a verdict awarding $10,000 punitive damages, the jury found appellant's conduct more than just unreasonable, they found it wilful, wanton and malicious-without just cause or excuse. This court cautions against the quick conclusion that because the jury awarded punitive damages, it must have found appellant's conduct to be, as respondents state, more than unreasonable and without just cause or excuse. Instruc-

tion No. 8 allowed the jury to award punitive damages if it found appellant's conduct to fall within one of three descriptions—wilful, wanton, or malicious. Only one description, that of "malicious", was further defined by Instruction No. 9 to be the doing of a wrongful act intentionally without just cause or excuse. The jury could find that appellant's conduct was either wilful or wanton without finding it to fall within the description and definition of malicious. It cannot be assumed that by awarding punitive damages, the jury found that appellant acted maliciously. Other alternative descriptions of the conduct exist and should not be ignored.

This court holds that although the trial court erred in using M.A.I. 27.03, the instruction for ejectment-damages only, as a basis for a modified verdict-directing instruction involving nuisance cause of action, (the obstruction of or interference with an easement), the error did not have a substantial potential for prejudicial effect because (1) M.A.I. 27.03 was submitted in a modified format to accurately describe the property interest of respondents as a right to access the premises by reason of ownership of the easement rather than a right to possess the premises; (2) counsel for appellant was aware at the instruction conference that the basis from which the verdict-directing instruction was formed was erroneous but failed to request or submit appropriate modifications; and (3) the closing arguments made by counsel for appellant presented to the jury appellant's chosen theme that it acted reasonably in denying access to respondents under the circumstances of this case. This court has assessed the prejudicial effect of the error and determined that it does not require a reversal of the judgment. Appellant's point one is ruled against it.

Appellant contends in its second point on appeal that the trial court erred in overruling appellant's motions for a directed verdict at the close of respondent's evidence and at the close of all the evidence as to the issue of punitive damages because respondent failed to present sufficient evidence to

warrant submitting the issue of punitive damages to the jury. This court disagrees.

The sufficiency of the evidence to warrant the imposition of punitive damages by the jury is a question of law within the reasoned discretion of the trial court. *Moon v. Tower Grove Bank & Trust Co.,* 691 S.W.2d 399, 401 (Mo.App.1985). In determining the sufficiency of the evidence to support a submission of punitive damages, the evidence most favorable to the plaintiff's submission and all inferences favorable to that submission are to be considered. *Smith v. Courter,* 575 S.W.2d 199, 207 (Mo.App.1978).

It is well settled that if the evidence sustains a showing of either actual or legal malice, punitive damages are recoverable. *Labrier v. Anheuser Ford, Inc.,* 621 S.W.2d 51, 58 (Mo. banc 1981). In this case, there is no contention of actual malice on the part of appellant towards respondents. Punitive damages were sought on the basis of legal malice. The test to be applied in determining whether legal malice existed as a basis for punitive damages is whether the defendant did a wrongful act intentionally and without just cause or excuse. *Beggs v. Universal C.I.T. Credit Corp.,* 409 S.W.2d 719, 722 (Mo. 1966). In order to justify punitive damages, there must be some element of wantonness or bad motive. *Id.*

The evidence most favorable to respondents indicates that one of the respondents, Mr. Gilbert, became aware of a problem with the easement over the stairway in May or June of 1985 and at that time, went to talk with Louise Keeney, assistant manager of appellant corporation in Fulton. He told Keeney of his easement, but testified that he received no response from her. On June 16, 1986, respondent again went to Keeney and requested access to the stairway. Keeney told him he could not use the stairway "because of security equipment" which appellant apparently stored on the second floor of its building. As of June 16, 1986, the old door on the first floor Court Street entrance had been replaced with a metal door and two locks. Respondents did not have keys to the locks. Respondent

again spoke to Keeney "right after" the June 16th conversation and requested access to the stairway so he could rent an upstairs apartment to a woman who was interested in it. Keeney again denied access due to the security equipment. Respondent later returned to show Keeney the deed evidencing his ownership of the easement. Keeney denied access, telling respondent she would give him a final decision later. Respondent was later told by Keeney that he was not to use the upstairs under any circumstance. Sometime between June 16, 1986 and February, 1987, a brick wall was built in the doorway of respondents' second floor apartment, thereby preventing any access to the stairway from either direction. Appellant owned a title insurance commitment and a title insurance policy insuring 401 Court Street. Both the commitment and policy indicated that the described property was "SUBJECT, HOWEVER, to easements and reservations of record." The commitment and policy each preceded in time the denial of access by the appellants of access to the stairway.

The trial court did not abuse its discretion in submitting the issue of punitive damages to the jury because the evidence most favorable to respondents supports a finding of legal malice. An element of bad motive or wantonness can be inferred from extent of the measures taken to block respondents' access to the stairway and the placement of the brick wall designed to totally block the doorway entrance to respondents' second-floor apartment rather than to merely secure appellant's entrance to its own second-floor of the building while still allowing respondents to pass through the stairway. Contrary to appellant's argument on appeal, there was sufficient evidence to infer that the appellant corporation obtained knowledge and notice of respondents' repeated claims to access the stairway by reason of the easement through its employee, Keeney, who acted with the authority of appellant during the course of her employment. Appellant's second point is ruled against it.

In the third point on appeal, appellant contends that the trial court abused its discretion and committed error in denying a

motion for a mistrial based on comments by respondent's counsel regarding title insurance. Appellant takes the position that the only reason to inject the issue of insurance of any type in this matter was to bias the jury in their award of damages. Respondent, in contrast, asserts that the exhibits of the title insurance commitment and title insurance policy were not offered for the purpose of placing the issue of insurance before the jury, but were introduced to show that appellant had knowledge of the existence of the easement when respondents were denied access to the stairway.

■ Whether a mistrial should be granted because of improper injection of insurance into a case is a matter for the proper exercise of a sound discretion by the trial court and only in the event of a manifest abuse of discretion should the appellate court interfere. *Nolting v. Petersen*, 404 S.W.2d 410, 413 (Mo.App.1966).

Counsel for respondent injected the issue of title insurance coverage into the trial during the opening statement by telling the jury that the evidence would contain a title insurance commitment and policy issued to appellant showing that ownership of the building was subject to an easement. In a conference at the bench for the purpose of hearing appellant's objection, the trial court ruled that the jury would be given an instruction that the exhibits were limited to show appellant's knowledge of the existence of the easement. Later, during the offering of exhibits, the trial court allowed respondent to admit the title insurance commitment and policy into evidence for the very limited purpose of showing knowledge of an easement. The court ruled that other matters contained in the exhibits were inadmissible, including any monetary figures. For that reason, counsel were prohibited from passing either exhibit to the jury or asking questions about any portion of the exhibits other than the relevant paragraph used for the sole purpose of showing knowledge of easements of record at the time of the purchase of the property by appellant. During a recess out of the presence of the jury, the court noted that respondents' modified verdict-directing instruction should include what was con-

sidered to be a necessary element, either actual or of record knowledge of the easement. Without such an element, the court commented, the two exhibits would not be related to any issue in the lawsuit and the motion for mistrial would need to be reconsidered. The verdict-directing instruction was modified to require respondents to prove appellant's knowledge of the easement, however, respondents did choose not to read the relevant paragraphs to the jury, question any witness regarding the notation in the exhibits, or make reference to the exhibits in closing arguments. There is no indication in the record that an instruction was given to the jury regarding the limited admission of the exhibits apparently because the exhibits were not referred to throughout the trial, except in opening statements, and respondents attempted to establish knowledge in an alternative manner.

■ The trial court did not abuse its discretion in refusing to declare a mistrial after respondents' counsel referenced a title insurance policy in the opening statement in light of the context in which the reference was made and the careful effort by the court to narrow the relevant portions of the exhibits concerning title insurance to the element of knowledge as set forth in the modified jury instructions. The trial court restricted any use of the exhibits to prove the issue of knowledge by the appellant of the existence of the easement. In *Muckenthaler v. Ehinger*, 409 S.W.2d 625 (Mo.1966), the court held that if the particular evidence tends to prove an issue formed by the pleadings, that evidence cannot be excluded merely because it would tend to show liability insurance on a motor vehicle. *Id.* at 628. Under the same rationale, if the evidence in the title insurance policy tended to prove the existence of knowledge of an easement at the time appellant purchased the property, that evidence need not be excluded merely because it also tends to show that appellant carried a title insurance when it acquired the building. Appellant's third point is ruled against it.

■ Appellant's fourth and final point on appeal contends that the trial court abused its discretion and committed

error in denying appellant's motion for mistrial due to counsel for respondents' references to the size, wealth and corporate status of appellant. Such remarks are improper when intended to arouse prejudice and are not within the scope of legitimate argument. *Higgins v. Terminal R. R. Ass'n of St. Louis,* 241 S.W.2d 380, 386 (Mo.1957). The trial court sustained two objections to the argument regarding the size and corporate status of appellant and each time granted motions to strike the argument from the record. However, the trial court denied the motions for mistrial.

Determining the prejudicial effect of final argument is a matter within the discretion of the trial court, and the trial court's judgment on that matter will not be disturbed unless there was an abuse of discretion. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.,* 700 S.W.2d 426, 434–35 (Mo. banc 1985). This court has examined the entire scope of the closing arguments and finds no abuse of the trial court's discretion in denying the motions for mistrial. Appellant's point four is ruled against it.

The judgment is affirmed.

All concur.