95 F.3d 733
 153 L.R.R.M. (BNA) 2291, 65 USLW 2217,
132 Lab.Cas. P 11,657
 O'NEIL'S MARKETS, doing business as Food For Less, Inc., Petitioner,
v.
UNITED FOOD AND COMMERCIAL WORKERS' UNION, MEATCUTTERS LOCAL
88, AFL-CIO, CLC, Intervenor,
National Labor Relations Board, Respondent.
O'NEIL'S MARKETS, doing business as Food For Less, Inc., Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
United Food and Commercial Workers' Union, Meatcutters Local
88, AFL-CIO, CLC, Intervenor.
 Nos. 95-3410, 95-3667.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 8, 1996.
Decided Sept. 13, 1996.
Rehearing Denied Oct. 31, 1996.
 
 Gary P. Paul, argued, Clayton, Missouri (James N. Foster, Jr., on the brief), for appellant.
 John Ferguson, Assistant General Counsel, argued, Washington, DC, for appellee.
 Before BOWMAN, BEAM, and MURPHY, Circuit Judges.
 BEAM, Circuit Judge.
 
 
 1
 Petitioner O'Neil's Markets (O'Neil's) appeals the decision of the National Labor Relations Board (the Board) finding that O'Neil's violated section 8(a)(1) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1), by preventing union organizers from distributing handbills on the sidewalk and parking areas surrounding its grocery store. The NLRB has filed a cross-application for enforcement of its order. We affirm in part and reverse in part.
 
 I. BACKGROUND
 
 2
 O'Neil's owns Food For Less, a grocery store located in the River Roads Mall in Jennings, Missouri. River Roads Mall is located at the intersection of New Halls Ferry Road, which runs north and south, and Jennings Station Road, which runs east and west. Food For Less is located in a building attached to the east end of the mall. The front entrance of the store, which faces south, is only accessible to customers from its parking lots and from the sidewalk in front of the store. Between the sidewalk and the south parking lot is a driveway, designated a "No Parking" area, used by cars traveling to and from stores in the mall.
 
 
 3
 O'Neil's leases the building in which Food For Less is located and the surrounding parking areas from Sam Wolff & Co. The lease agreement provides that O'Neil's shall have, in common with Sam Wolff & Co. and its other lessees, "a mutual non-exclusive easement of ingress, egress, and parking for its customers, employees and invitees over and upon the rights of way and parking areas." The lease also provides, in relevant part:
 
 
 4
 No. 4-A: Lessor hereby grants to Lessee for the benefit of Lessee's officers, employees, agents, customers, and invitees, during the term hereof, in common with others entitled to such use, the non-exclusive right to use said parking area or areas and access roads....
 
 
 5
 ...
 
 
 6
 No. 4-C: The common areas shall be subject to the exclusive control and management of Lessor....
 
 
 7
 No. 4-D: In addition to the rents hereinabove provided for, Lessee agrees, during the terms hereof, to pay to Lessor an accommodation charge of $.25 per sq. ft. per year which shall be Lessee's share of Lessor's gross cost and expense of operating and maintaining of the public area.... [T]here may be included in such gross cost and expense, the cost of public liability and property damage insurance, operation, repairs, management, security, maintenance, cleaning, lighting and other utilities, line painting, and snow removal.
 
 
 8
 Nonetheless, except for snow removal, Sam Wolff & Co. has not billed O'Neil's for maintenance of the public areas for several years. In fact, despite the lease provisions, O'Neil's routinely maintains the parking areas and sidewalk.
 
 
 9
 As owner of Food For Less, O'Neil's prohibits soliciting by its employees, who are not unionized, and by nonemployees. Thus, O'Neil's has refused requests by various organizations and individuals to solicit near the store. In addition, a "No Soliciting or Trespassing" sign is generally posted in front of the store. On September 20, 1994, however, that sign was not on display. On that day, two members of the United Food and Commercial Workers, Meatcutters Local 88 (the Union) began peacefully distributing handbills to Food For Less customers while standing on both the sidewalk and the "No Parking" area in front of the store. The two handbillers were not employed by Food For Less. The handbills stated:
 
 FOR INFORMATION ONLY
 PLEASE DO NOT BUY MERCHANDISE
 FOOD FOR LESS
 WHICH IS PAYING THEIR EMPLOYEES WAGES
 AND BENEFITS WHICH ARE LESS THAN THE
 STANDARDS ESTABLISHED BY
 UNITED FOOD & COMMERCIAL WORKERS
 IN THE AREA, AND THEREBY UNDERMINING
 
 10
 THOSE STANDARDS.
 
 
 11
 UNITED FOOD AND COMMERCIAL WORKERS,
 
 MEATCUTTERS LOCAL 88
 
 12
 (AFL-CIO)
 
 REQUEST THAT CUSTOMERS
 DO NOT PURCHASE ANY MERCHANDISE
 FOOD FOR LESS
 
 13
 LOCAL 88 HAS NO DISPUTE WITH ANY OTHER EMPLOYER
 
 THIS IS AN INFORMATIONAL PICKET ONLY
 
 14
 After approximately one-half hour of this picketing, representatives of Food For Less advised the handbillers to leave the area. They suggested that the handbillers move to a public sidewalk located east of the store next to New Halls Ferry Road, or to an area west of the River Roads Mall. When the handbillers did not leave the area, the Food For Less representatives called the local police. The handbillers then ceased handbilling.
 
 
 15
 Following this incident, the Union filed an unfair labor practice charge with the Board alleging that O'Neil's had unlawfully interfered with its right to engage in "area standards handbilling"[1] as protected by section 7 of the NLRA.[2] The Board's General Counsel issued a complaint, charging O'Neil's with a violation of section 8(a)(1) of the NLRA.[3] In response, O'Neil's argued that the Union's handbilling was not protected by section 7. In the alternative, O'Neil's contended that its property rights outweighed the Union's section 7 rights and therefore that it could lawfully exclude the Union handbillers.
 
 
 16
 The parties stipulated to the facts in the case and submitted the matter to the Board. The Board found that the General Counsel and the Union had made a prima facie showing that the Union was engaged in valid area standards handbilling and that area standards activity is protected under section 7. The Board further concluded that since O'Neil's possessed only a nonexclusive easement in the sidewalks and parking areas surrounding Food For Less, its property interest was insufficient to exclude the handbillers. Thus, the Board held that O'Neil's removal of the Union handbillers constituted a violation of section 8(a)(1) of the NLRA.
 
 
 17
 On appeal, O'Neil's argues, among other things, that: 1) private property owners are not obligated to accommodate area standards handbilling, a "weak" section 7 right; 2) the Board did not require the Union to establish the validity of its area standards message, thereby improperly allocating the burden of proof on that issue; and 3) O'Neil's had a sufficient state law property interest to exclude the Union members from the sidewalk and parking areas, and, therefore, its exclusion did not constitute an unfair labor practice.
 
 II. DISCUSSION
 
 18
 The United States Supreme Court has long recognized limitations on the rights of nonemployee[4] union organizers to engage in section 7 activities on private property. In NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), an employer refused to allow union organizers not employed by the company to distribute union literature to the company's employees on the company-owned parking lot. The Supreme Court reversed the Board's finding that the employer had violated section 8 of the NLRA. The Court noted that although accommodation between union organizing rights and property rights should be obtained "with as little destruction of one as is consistent with the maintenance of the other," any accommodation must be mindful of the distinction between employees and nonemployees. Id. at 112-13, 76 S.Ct. at 684-85. Few restrictions can be placed on employees' ability to organize, but the rights of nonemployee organizers to access private property are far more circumscribed. Therefore, although private property rights must in limited circumstances yield to nonemployee union activities, generally "an employer may validly post his property against nonemployee distribution of union literature if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message." Id. at 112, 76 S.Ct. at 684.
 
 
 19
 The Court reaffirmed Babcock 's holding in Lechmere, Inc. v. NLRB, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992). In so doing, the Court specifically rejected the Board's attempts to transform Babcock 's rules into a balancing test, in which the degree of impairment of section 7 rights if access to private property is denied is weighed against the degree of impairment of the private property right if access is granted. See Lechmere, 502 U.S. at 536, 112 S.Ct. at 847. According to the Court, when nonemployee union organizers have reasonable access to employees outside an employer's property, there is no need for a balancing analysis; "the requisite accommodation has taken place." Id. at 538, 112 S.Ct. at 848. It is only where such access is infeasible that it is proper to balance the employees' and employer's rights. Id.
 
 
 20
 Like Babcock and Lechmere, the present case presents a conflict between union rights and private property rights. It does not, however, fit neatly into the Babcock/Lechmere construct. Unlike the employers in those cases, O'Neil's does not own the parking lot or sidewalk at issue. Moreover, the Union members sought to reach Food For Less customers with its message, rather than its employees. Accordingly, in order to determine how Babcock and Lechmere apply, we must decide whether the Union was exercising a section 7 right and, if so, whether O'Neil's property interest is sufficient to allow it to exclude the organizers without violating that right. As always, we will enforce the Board's order " 'if the Board has correctly applied the law and if substantial evidence in the record supports its findings.' " Brown Shoe Co. v. NLRB, 33 F.3d 1019, 1022 (8th Cir.1994) (quoting NLRB v. Earle Indus., Inc., 999 F.2d 1268, 1272 (8th Cir.1993)).
 
 
 21
 A. Area Standards Handbilling as a Section 7 Activity
 
 
 22
 O'Neil's argues that, after Lechmere, area standards picketing, if protected by section 7 at all, is a weak right along the spectrum of section 7 rights. O'Neil's points out that area standards picketers target an employer's customers, not its employees. Since section 7 confers rights only on employees, rather than on nonemployee organizers or consumers, O'Neil's contends that property owners are not required to grant union members access to private property for area standards picketing.
 
 
 23
 We do not agree that Lechmere has this effect. Although Babcock and Lechmere involved organizational rights, section 7 protects other, non-organizational activities. See Eastex, Inc. v. NLRB, 437 U.S. 556, 564-65, 98 S.Ct. 2505, 2511-12, 57 L.Ed.2d 428 (1978); Hudgens v. NLRB, 424 U.S. 507, 522, 96 S.Ct. 1029, 1037-38, 47 L.Ed.2d 196 (1976). Both the Supreme Court and this court have recognized, at least implicitly, that a union's peaceful area standards activity is protected by section 7 of the NLRA. See, e.g., Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 205-06 & n. 42, 98 S.Ct. 1745, 1761-62 & n. 42, 56 L.Ed.2d 209 (1978); NLRB v. International Union of Operating Eng'rs, Local 571, 624 F.2d 846, 849-50 (8th Cir.1980). Nothing in Lechmere alters that conclusion.
 
 
 24
 Lechmere 's statement that section 7 confers rights on "employees" does not preclude section 7 protection for area standards activities. As the Supreme Court made clear in Eastex, the "employees" who may engage in concerted activities under section 7 " 'include any employee, and shall not be limited to the employees of a particular employer.' " 437 U.S. at 564, 98 S.Ct. at 2511 (quoting 29 U.S.C. § 152(3)). In this case, the parties agree that the handbillers were not only Union members but also employees (though not employees of O'Neil's). As such, they were exercising their own rights under section 7 to engage in concerted activities for "other mutual aid or protection." 29 U.S.C. § 157. Furthermore, in engaging in area standards picketing, a union is "protecting the wage standards of its members who are employed by competitors of the picketed employer." Sears, 436 U.S. at 206 n. 42, 98 S.Ct. at 1762 n. 42. Thus, in many cases, both the distributors and the beneficiaries of area standards information possess rights under section 7. Accordingly, although area standards handbillers are not engaging in "core" organizing activities and therefore may deserve fewer accommodations, private property owners may, under certain circumstances, be obligated to accommodate them.
 
 
 25
 B. Burden of Proving Valid Area Standards Activity
 
 
 26
 O'Neil's next asserts that, assuming area standards handbilling is protected activity under section 7, there is no evidence that O'Neil's wages and benefits were substandard. Indeed, the Board did not require the Union to come forward with evidence demonstrating the standards in the area or the disparity in O'Neil's wages and benefits. Instead, the Board stated:[I]f the union's activity is ostensibly in support of area wage and benefit standards, we will consider, prima facie, the union's activity protected by Section 7. At that point, it is the respondent employer's burden to establish, if it can, that the union's activity is not what it appears to be and that it is outside the sphere of Section 7 protection.
 
 
 27
 O'Neil's Markets, Inc., 318 N.L.R.B. 1, 3, 1995 WL 511396 (1995). Relying on NLRB v. Great Scot, Inc., 39 F.3d 678, 684 (6th Cir.1994), in which the Sixth Circuit held under similar facts that a union has the heavy burden of "establish[ing] both the area standards and the claimed disparity," O'Neil's argues that the Board misallocated the burden of proof on this issue and must be reversed. The General Counsel and the Union counter that the Board reasonably allocated the burden of proof in light of the speech interest involved and the fact that, in other contexts, section 7 protection does not depend on proof of the truthfulness of the statements made.
 
 
 28
 Although we acknowledge that a policy favoring free speech anchors section 7, we nevertheless agree with O'Neil's that the Board misallocated the burden of proof regarding the validity of the area standards message. It is well settled that "the General Counsel carries the burden of proving the elements of an unfair labor practice." NLRB v. Transportation Management Corp., 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983); see also 29 U.S.C. § 160(c). Violations of section 8 may be adjudicated only "upon the preponderance of the testimony" taken by the Board. 29 U.S.C. § 160(c). In this case, the essential element of the alleged unfair labor practice is the existence of a valid area standards objective.[5] Here, the Board allowed a presumption to substitute for this crucial element. In our opinion, the mere fact that two members of the Union representing employees of other grocery stores in the area began handbilling in front of O'Neil's store does not, standing alone, support a presumption that a valid area standards objective motivated the Union's activity. Rather, we believe that, at a minimum, the Union should have been required to demonstrate "a bona fide attempt ... to determine if the Company was paying less than the area standards wage." International Union of Operating Eng'rs, Local 571, 624 F.2d at 849. Requiring any less is inconsistent with the NLRA's requirement that the General Counsel prove all of the elements of an unfair labor practice by a preponderance of the evidence. We therefore conclude that the Board erred in accepting, without further evidence, the Union's area standards message and in requiring O'Neil's to prove that its wages and benefits were not substandard. Accordingly, we remand this case for further assessment of this issue. We leave it to the Board to determine the quantum of proof necessary to demonstrate a valid area standards objective.
 
 C. O'Neil's Property Right
 
 29
 Finally, O'Neil's argues that it possessed a sufficient property interest in the sidewalk and parking areas to exclude the Union handbillers. Despite our remand on the burden of proof issue, we address this point because, if the General Counsel meets its burden, O'Neil's property interest may still be the deciding factor in determining whether O'Neil's violated section 8(a)(1).
 
 
 30
 The Court's decision in Lechmere clearly reflects a concern for private property rights. See Metropolitan Dist. Council of Philadelphia and Vicinity United Brotherhood of Carpenters v. NLRB, 68 F.3d 71, 74 (3d Cir.1995). That decision, however, did not address to what extent the Lechmere accommodation principles apply when the employer seeking to exclude nonemployee union handbillers is not the owner of the underlying property at issue. Thus, Lechmere leaves undisturbed previous Board holdings that an employer lacking the right to exclude others from certain property violates section 8(a)(1) when it removes section 7 actors from those areas. See, e.g., Johnson & Hardin Co., 305 N.L.R.B. 690, 1991 WL 251699 (1991), enf'd, 49 F.3d 237 (6th Cir.1995). We therefore turn our attention to O'Neil's lease and Missouri property law to determine whether O'Neil's was authorized to exclude others from the River Roads Mall parking areas and sidewalks.
 
 
 31
 Under the lease between Sam Wolff & Co. and O'Neil's, O'Neil's possesses a "non-exclusive easement of ingress, egress, and parking" over the rights of way and parking areas surrounding the River Roads Mall. Clearly, this non-exclusive right to use the parking areas and access roads does not directly authorize O'Neil's to exclude persons from the sidewalk and "No Parking" area in front of its store. O'Neil's argues that it exercised substantial control over the sidewalk and parking areas by repairing and maintaining the property. However, O'Neil's can point to no authority, and we have found none, which indicates that an individual's exercise of maintenance and control over property overrides unambiguous language in a lease granting that individual only a non-exclusive easement. To the contrary, Missouri law has consistently held that if a lease is unambiguous, courts may consider only the text of the lease provisions as evidence of the intent of the parties to the agreement. Washington Univ. v. Royal Crown Bottling Co., 801 S.W.2d 458, 464 (Mo.Ct.App.1990).
 
 
 32
 Moreover, Missouri property law does not support O'Neil's position. Under Missouri law, an easement is a nonpossessory interest in land which entitles the owner to "a limited use or enjoyment of the land in which the interest exists." Gilbert v. K.T.I., Inc., 765 S.W.2d 289, 293 (Mo.Ct.App.1988). An easement owner "is debarred from actions traditionally established for the protection of a possession, such as trespass, writ of entry and ejectment, because the easement owner does not have the prerequisite possession." Id. Instead, liability for interference with an easement lies in a nuisance action. Id. at 294. Thus, unless the Union's picketing in this case interfered with the right of O'Neil's, its employees, or customers to use the easement property, O'Neil's cannot justify its exclusion of the Union handbillers. O'Neil's does not allege, nor does the record support, such interference in this case. We therefore conclude that the Board did not err in holding that O'Neil's lacked a property interest sufficient to exclude the handbillers.[6]
 
 
 33
 Where, as here, an employer lacks the right to exclude others from the property involved in the complaint, the Board has consistently held that the principles announced in Babcock and Lechmere do not apply. See Johnson & Hardin, 305 N.L.R.B. at 690, 1991 WL 251699. We agree. Those principles apply only when a property right sufficient to permit the exclusion of others and section 7 rights conflict. Therefore, if, on remand, the Board determines that the General Counsel has sufficiently established that the Union was engaged in valid area standards picketing, O'Neil's interference with that activity would violate section 8(a)(1) of the NLRA.
 
 III. CONCLUSION
 
 34
 To the extent that the Board's order holds that area standards picketing is protected and finds that O'Neil's lacked a sufficient property interest to exclude others from its easement, we affirm. Nevertheless, the portion of the Board's order that misallocated the burden of proving valid area standards activity is set aside, and the case remanded to the Board for further proceedings consistent with this opinion.
 
 
 
 [1]
 A union engages in area standards handbilling " 'to protect the employment standards it has successfully negotiated in a particular geographic area from the unfair competitive advantage that would be enjoyed by an employer whose labor cost package was less than those of employers subjected to the area contract standards.' " Giant Food Markets, Inc. v. NLRB, 633 F.2d 18, 23 n. 11 (6th Cir.1980) (quoting Giant Food Markets, Inc., 241 N.L.R.B. 727, 728, 1979 WL 8940 (1979))
 
 
 [2]
 Section 7 of the NLRA provides that "employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157
 
 
 [3]
 Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7] of this title." 29 U.S.C. § 158(a)(1)
 
 
 [4]
 In this opinion, the term "nonemployee" refers to individuals who are not employed by the picketed employer, in this case O'Neil's
 
 
 [5]
 In light of the subtle distinction between protected and prohibited union activity, the union's picketing objective is often determinative in unfair labor practice cases. For example, although picketing in support of area standards has been recognized as a section 7 right, with limited exceptions a union cannot picket if the object of the activity is to force an employer to recognize or bargain with a labor organization. See 29 U.S.C. § 158(b)(7)
 
 
 [6]
 In contending that its easement conferred the right to exclude, O'Neil's relies on Winslow v. Sauerwein, 285 S.W.2d 21 (Mo.Ct.App.1955). In Winslow, the court held that, in a proper case, an easement holder can invoke the extraordinary remedy of an injunction to restrain interference with an easement. Id. at 25. Such a remedy is warranted, however, only when the injury complained of is irreparable, the interference is of a permanent and continuous character, and a remedy at law would not afford adequate relief. Id. In this case, nothing even remotely comparable to the interference alleged in Winslow is present. Moreover, subsequent to Winslow, Missouri courts have consistently hesitated to find interference with an easement. See, e.g., Gisler v. Allen, 693 S.W.2d 201 (Mo.Ct.App.1985); Kiwala v. Biermann, 555 S.W.2d 663 (Mo.Ct.App.1977). Therefore, we find that O'Neil's reliance on Winslow is misplaced